MICHAEL J. HEYMAN
United States Attorney

CHRISTOPHER D. SCHROEDER
ADAM ALEXANDER
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: christopher.schroeder@usdoj.gov
Email: adam.alexander@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID WAYNE ANDERSON,<br><br>Defendant. | No. 3:22-cr-00090-SLG-MMS |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through undersigned counsel, respectfully submits this Sentencing Memorandum in anticipation of the Imposition of Sentence hearing scheduled for Thursday, May 29, at 1:00 p.m.

//

//

# SUMMARY OF SENTENCING RECOMMENDATIONS

**INCARCERATION**.................................................................................. **600 Months**

**SUPERVISED RELEASE** ...................................................................**Lifetime**

**MANDATORY SPECIAL ASSESSMENT** ......................................................**$200.00**

**JVTA SPECIAL ASSESSMENT** ..................................................................**$5,000.00**

## I. The Offense Conduct.

On Wednesday, November 2, 2022, around 3:00, a 14-year-old girl got off the school bus in Wasilla and started walking home. A dark-colored Chevrolet El Camino drove past, heading eastbound:



*U.S. v. Anderson*
No. 3:22-cr-00090-SLG-MMS          Page 2 of 11

Surveillance cameras showed the victim turning back to look at the El Camino as it drove by. The El Camino turned around and came back into view about a minute later, now heading westbound, back toward the victim.

The driver of the El Camino was Defendant David Wayne Anderson, a 49-year-old convicted sex offender. Anderson pulled up alongside the victim and called out to her, asking if she knew someone named "James." Somehow – and the victim did not recall in her statement exactly how – Anderson convinced her to get into his car. Once she was inside, he pointed a Sentinel .22 caliber revolver at her. He grabbed a lollipop out of her mouth and threw it out the window. He told her to take a hit off of a methamphetamine pipe he was smoking. She faked doing so. He then covered her head with a blanket and punched her at least once in the face. He bound her hands with duct tape. He drove with her as his captive for what she later described was a long time.

Surveillance cameras showed the El Camino driving westbound and then turning around on a dead-end street. A second person was visible in the passenger seat when the vehicle turned around and drove past the trailcam:



Anderson drove to W. Sunrise Road, about 15 minutes or 10.5 miles away, and stopped the car. He got and led the victim into the woods down a powerline trail. She still had the blanket over her head and could not see where she was. There, he raped her, forcibly penetrating her both vaginally and digitally. When he was finished, he stole several items out of her backpack, including her Nintendo Switch, the charger from her school Chromebook, and her cellphone. He told her not to move until he was gone. He then stood over her, shielded his eyes so that he would not see what he was about to do, and fired multiple gunshots at her from the Sentinel .22 revolver as she lay on the ground. Without looking to see whether he had hit her, he left her in the woods and drove away.

*U.S. v. Anderson*
No. 3:22-cr-00090-SLG-MMS              Page 4 of 11

After he was gone, the victim chewed through the duct tape on her hands. She walked out of the woods, down to the road, and flagged down a passing driver. She was able to give a good description of both Anderson and his vehicle to the Alaska State Troopers. Based on her description, Troopers arrested Anderson later that night.

Anderson gave a confession in which he described struggling with pervasive thoughts about committing a rape, which would get worse when he looked at young girls. On the day of the incident, he took the revolver from his residence and went out looking for a victim. He had gone out looking like this before, but never actually found anyone. He said he asked the victim to get into his car by telling her he was lost and was looking for a friend. Once she was inside, he pointed the gun at her, took her phone, and told her he was going to rape her.

Anderson admitting punching the victim in the head and covering her with a blanket. He admitted that he drove her into the woods, took her down the powerline trail, and ordered her to lie down a blanket and take off her clothes. He admitted that he cut off her bra with a knife. He admitted to fondling and sucking on her breasts, digitally penetrating her, and having vaginal intercourse with her until he ejaculated. He said he did not know how old she was but that she appeared to be either 12 or 13. He admitted that he stood over her and shot at her three times, then walked away not knowing if she was dead, saying, "I didn't want to know." After leaving her in the woods, he disassembled the Sentinel revolver and tossed the pieces into the Little Susitna River. At several points during the interview, Anderson insisted, "She never once told me 'No.'"

//

He wrote her the following apology letter:

> To my victum
>
> I dont No how to say Im sorry for what I did to you, It wasn't your Fault you did nothing wrong and did not deseve it. Im The one That is messed up and I wish I could take it Back I pray you will get Through This and recover stronger Then you might think you can Nothing I can say or do will change what I did but I am truly sorry I lost to the monster inside me and hurt you
>
> David

On January 13, 2025, Anderson pleaded guilty pursuant to a written plea agreement to Count 1, Kidnapping of a Minor, in violation of 18 U.S.C. §§ 1201(a)(1) and 3559(f)(2), and Count 2, Commission of an Offense by a Registered Sex Offender, in violation of 18 U.S.C. § 2260A. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that a sentence of 600 months imprisonment was an appropriate disposition of the case.

//

## II. Application of the § 3553(a) Sentencing Factors.

For the following reasons, the Government submits that a sentence of 600 months imprisonment, representing the low end of the guideline range, is "sufficient, but not greater than necessary, to comply with the purposes" of felony sentencing.[1]

### A. The Nature and Circumstances of the Offense.

David Anderson committed one of the most horrific crimes in the history of the federal court system in this district. He abducted a young girl walking home from school, beat her, tied her up, threw a blanket over her head, drove her out into a remote location in the woods, raped her, and then tried to kill her. It was only because of his cowardice in the face of his own actions that the gunshots he fired missed the victim, and she is alive today. What happened in this case was every parent's worst fear realized.

Anderson's attack on the victim will likely have devastating, lifelong consequences. "94% of women who are raped experience symptoms of post-traumatic stress disorder (PTSD) during the two weeks following the rape" in which they re-experience the event through flashbacks, dreams, or intrusive thoughts.[2] 30% of them continue to suffer from PTSD nine months after the attack.[3] 33% of women who are raped contemplate suicide,

---

[1] 18 U.S.C. § 3553(a).

[2] Rape, Abuse, and Incest National Network (RAINN), *Victims of Sexual Violence: Statistics*, rainn.org/statistics/victims-sexual-violence (last visited May 22, 2025) (citing D.S. Riggs, T. Murdock, W. Walsh, *A Prospective Examination of Post-Traumatic Stress Disorder in Rape Victims*, Journal of Traumatic Stress 455-475 (1992)).

[3] *Id.* (citing Jonathan R. Davidson & Edna B. Foa (Eds.), *Posttraumatic Stress Disorder: DSM-IV and Beyond* 23-36, American Psychiatric Press (1992)).

and 13% of them attempt it.[4] Victims of sexual assault are ten times more likely to use drugs than the general public.[5] They are three times more likely to suffer from major depressive episodes.[6] They are more likely to have lowered academic achievement, including declines in overall GPA, increased absenteeism, having to transfer institutions, or dropping out of school altogether.[7] For abused children, "aggressive and assaultive behavior become the primary vehicles" for making connections with others.[8]

David Anderson caused unimaginable harm to the victim and her family – harm that she will live with for the rest of her life. The nature and circumstances of this offense are as serious as any the Court will ever see.

**B. The history and characteristics of the defendant.**

On June 13, 2000, Anderson sexually assaulted a 13-year-old girl in the woods outside of Soldotna.[9] Anderson approached the girl and asked if he could "get some sex"

---

[4] Nat'l Victim Ctr. & Crime Victims Res. and Treatment Ctr., *Rape in America: A Report to the Nation* 7 (Apr. 23, 1993), https://perma.cc/DT65-KNXG.

[5] *Id.*

[6] Denise M. Dunleavy, *Emotional Injuries: Maximizing Recovery for the Survivor of Sexual Assault*, 2 Ann.2006 ATLA-CLE 1857 (2006).

[7] Carol E. Jordan et al., *An Exploration of Sexual Victimization and Academic Performance Among College Women,* 15 Trauma, Violence, & Abuse 191 (2014).

[8] Arthur H. Green, *Dimensions of Psychological Trauma in Abused Children*, 22 J. Am. Acad. Child Psychiatry 231, 234-35 (1983).

[9] Dkt. 68 at ¶ 46.

from her.[10] When she said "No," he responded, "Well then I'm gonna take it."[11] Anderson picked the girl up and forcibly placed her on the hood of his car. He then raped her while his girlfriend held the victim's wrists down. He pleaded guilty to Sexual Assault in the First Degree and was sentenced to 12 years imprisonment, with 4 years suspended.[12] He was released from prison in 2007 after serving only 6 years.[13] This case is now the second time that Anderson has forever changed the course of an innocent child's life.

As a result of that conviction, Anderson was required to register as a sex offender for life.[14] In 2015, he failed to update his sex offender registration when he moved to Sterling. He was convicted of Failure to Register as a Sex Offender, a misdemeanor.[15] He then committed this crime – his second child rape – while under that lifetime duty to register. In his statement to investigators, he admitted to having fantasies of raping children, and described going out in his car with a gun to look for more victims. Whatever mitigation there might be in his history and characteristics pales in comparison to what he did in this case.

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *See* Alaska Stat. § 12.63.020(a)(1)(A)(i) (imposing lifetime duty to register on anyone convicted of an aggravated sex offense); § 12.63.100(1)(C) (defining "aggravated sex offense" to include Sexual Assault in the First Degree).

[15] Dkt. 68 at ¶ 50.

Anderson has not even made good use of his time in jail since his arrest. While in pretrial custody in this case, he received two informational warnings for Refusing to Obey a Direct Order of Staff and Threats to Another of Immediate Bodily Harm, and 30 days loss of commissary for Adulteration of Food and Drink.[16] He has done nothing to deserve the mercy of this Court, and he should receive none.

### C. The need to reflect the seriousness of the offense, promote respect for the rule of law, and to provide just punishment.

The offense in this case could not be more serious, and the need for punishment is at its apex in a case involving a violent sex offense against a child. Because the agreed-upon sentence effectively guarantees that Anderson will die in prison, the need to promote respect for the rule of law going forward is not a relevant consideration.

### D. The need to afford deterrence and to protect the public from further crimes.

Given that Anderson will never be released from prison, the agreed sentence absolutely ensures that the public will be protected against any crimes he might commit in the future. Such a severe sentence also has the potential to deter other potential sex offenders by reminding them of the consequences if they attempt to act on their desires.

### E. The need to avoid unwarranted sentencing disparities.

According to the Presentence Report, there was an insufficient number of defendants nationwide over the past five years whose primary guideline was § 2A4.1 (kidnapping), with a final offense level of 42, and a Criminal History Category of V, to

---

[16] *Id.* at ¶ 7.

determine a national average or median sentence. The Government also submits that the conduct in this case is so uniquely egregious that it defies strict mathematical comparisons to national averages.

## III. CONCLUSION

For the foregoing reasons, the Government respectfully asks this Honorable Court to impose a sentence of 600 months imprisonment, consisting of consecutive terms of 480 months on Count 1 and 120 months on Count 2, followed by lifetime supervision, a $200 mandatory special assessment, and a $5,000 special assessment under the Justice for Victims of Trafficking Act of 2015.

RESPECTFULLY SUBMITTED this 22nd day of May 2025 in Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

*s/ Christopher D. Schroeder*
CHRISTOPHER D. SCHROEDER
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2025,
a copy of the foregoing was served via
the CM/ECF system on:

Ben W. Muse
Burke Wonnell

*s/ Christopher D. Schroeder*
Office of the U.S. Attorney